Eastern District of Kentucky
FILED
DEC 07 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-53-GWU

BETTY L. WALKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Betty Walker, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment from degenerative disc disease of the lumbar spine. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Walker retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 51 years, high school education, and work experience in an auto assembly plant could perform any jobs assuming that she were limited to light level exertion, could only occasionally climb, stoop, crouch, and crawl, and needed to avoid whole body vibration. (Tr. 349). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to bulging discs in her lumbar spine. (Tr. 72). Back pain had caused her to stop working at her job on an assembly line in May, 1999, after 30 years. (Tr. 332-4). After injections and physical therapy, she was released to return back to work, but was eligible to retire, so she actually only worked four more days. (Tr. 337). She officially retired on October 1, 1999. (Tr. 343). She still had low back pain which radiated down her right leg, and could only sit, stand, or walk for 15 to 30 minutes at a time. (Tr. 336, 341, 348). She felt that she could not lift more than her 20 pound granddaughter without hurting herself. (Tr. 338). With pain medication, she could do some household chores such as laundry and could lean on the sink to do dishes, but could not vacuum or mop. (Id.). She did not do yard work, had help with grocery shopping (Tr. 340), and had to use a motorized cart in the grocery store (Tr. 346).

Medical records in the transcript show that Mrs. Walker was diagnosed with lumbar radiculitis in 1999, after an MRI of the lumbosacral spine showed bilateral spondylosis of L5 with grade I spondylolisthesis of L5 on S1 and degeneration of L4-5 and L5-S1. (Tr. 201-2, 231). She was given a course of lumbar epidural steroid injections in June and July, 1999. (Tr. 190-200). In August, 1999, Mrs. Walker underwent a functional capacity evaluation (FCE) which indicated that she had the ability to lift 40 pounds occasionally, 20 pounds frequently, and 8 pounds constantly, although she was said to need a program to address deconditioning. (Tr. 203). An orthopedic surgeon, Dr. Robert Winans, examined Mrs. Walker on August 31, 1999

and noted that the plaintiff stated she had definitely improved after seven weeks of physical therapy and three epidural steroid injections. (Tr. 211-12). He also reviewed x-rays and the MRI report, as well as records from the plaintiff's treating osteopathic physician, Dr. Frank Swords. (Tr. 212-13). Dr. Winans' examination showed mild tenderness to palpation in the mid low back, but no reflex or sensory abnormalities, and there was normal muscle strength. (Tr. 214-16). He diagnosed "lumbar spine pain syndrome without objective abnormalities on physical examination," and "spondylosis with first-degree spondylolisthesis at L5-S1 with bilateral pars defects, pre-existing the injury." (Tr. 216). In his opinion, Mrs. Walker was at maximum medical improvement and she could return to work, but would be limited to no carrying or lifting over 20 pounds, and could do "no" bending or twisting. (Tr. 217). He also recommended that she wear a back brace at all times while at work. (Id.).

Dr. Swords, the osteopath, treated the plaintiff for several months in 1999, and on September 20, 1999 wrote a "To Whom It May Concern" letter stating that Mrs. Walker could return to work on September 27th. (Tr. 220). By contrast, almost three years later, on August 13, 2002, he signed a form stating that he had seen the plaintiff from June to September, 1999, that she had a diagnosis of a "lumbar herniated disc," and that "no lifting, carrying, or handling objects should take place." (Tr. 219). He also prohibited "extensive traveling." (Id.). No explanation for the

discrepancy between these two opinions is provided. There was no evidence of office visits after 1999.

All of the plaintiff's treatment to this point took place in Texas, near her place of employment. By October, 1999, she had retired and moved to Kentucky, and sought treatment from Dr. William Fannin. (Tr. 313). Dr. Fannin continued to treat her regularly through 2003, although on many occasions she was seen by nurse practitioners in his office. (Tr. 271-313). His most recent examination of the plaintiff was on January 14, 2003, when the plaintiff was complaining of continued shortness of breath, low back pain radiating into both hips and into the lower extremities, knee pain, and acid reflux. (Tr. 273). Dr. Fannin's examination showed a slight antalgic gait, scattered wheezing in the lungs, decreased lumbar lordosis in the back and a decreased range of motion with "palpable cords," and positive straight leg raising bilaterally. (Id.). His assessment was chronic low back pain, spondylolisthesis, symptomatic osteoarthritis, and gastroesophageal reflux disease. (Id.). Two further examinations were conducted in February and March, 2003, by a family nurse practitioner in Dr. Fannin's office, with similar findings of lumbar tenderness and increased lumbosacral pain with forward bending, but no sensory or other neurological deficits. (Tr. 271-2).

Dr. Fannin completed a physical residual functional capacity form on February 3, 2003, stating that Mrs. Walker would be lifted to lifting 10 pounds occasionally, standing and walking a total of two hours in an eight-hour day (no more than 20

minutes without interruption), sitting for two hours in an eight-hour day (no more than 30 minutes without interruption), never climbing, balancing, or crawling, occasionally stooping, crouching, or kneeling, and having limitations on her ability to reach, handle, push, pull, and to work around heights, moving machinery, temperature extremes, noise, fumes, humidity, and vibration. (Tr. 261-3). On another form called a "Low Back Residual Functional Capacity Questionnaire," completed the same day, Dr. Fannin indicated that he had seen Mrs. Walker on a nearly monthly basis since February, 2000, and she had problems including muscle spasms, lower extremity pain and numbness, difficulty walking, muscle weakness, positive straight leg raising, and reduced range of motion. (Tr. 264). He apparently was aware of the June, 1999 MRI. (Id.). He added that the medications he was prescribing, which included Darvocet and Klonopin (Tr. 272), had side effects of drowsiness, nausea, and dizziness (Tr. 265). He also diagnosed depression, and stated that she would "often" have interference with attention and concentration. (Id.). Finally, Dr. Fannin completed a mental residual functional capacity form opining that Mrs. Walker would have a "seriously limited but not precluded" ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions due to chronic pain and depressive symptoms. (Tr. 268-70).

The ALJ rejected any mental restrictions because no objective findings of depression or anxiety were contained in the treatment record. (Tr. 15). He also noted that a state agency psychological consultant found that there was no "severe"

mental impairment (Tr. 245), and that the plaintiff herself denied that she was alleging disability due to mental problems at the administrative hearing (Tr. 335). The plaintiff correctly objects that the state agency psychologist gave his opinion prior to the receipt of Dr. Fannin's mental restrictions. The opinion of a non-examining physician may be accepted over that of an examiner where the non-examiner has had access to the entire record and clearly stated his reasons for disagreeing with the examiner, Barker v. Shalala, 40 F.3d 789, 794-5 (6th Cir. 1994), but that is not the case here. Moreover, Dr. Fannin did mention depression in some of his earlier notes (Tr. 296) and, in addition, cited "chronic pain" as a cause of the limitations. The plaintiff testified that her back was her major problem and that she thought she could work if her back problem went away, but this is not necessarily inconsistent with having the pain-related mental restrictions cited by Dr. Fannin.

More important, the ALJ erroneously rejected Dr. Fannin's physical restrictions on the grounds that they were not well supported by objective findings, by other medical evidence, and by the plaintiff's reported daily activities. The ALJ cited the 1999 functional capacity evaluation and Dr. Winans' indication that she could perform light work as inconsistent factors (Tr. 17), but he did not address Dr. Winans' statement that she should do "no" bending or twisting and must wear a back brace at all times. This indicated greater restriction than the hypothetical question. The ALJ emphasized that the MRI showed only degenerative changes, and that there was no clinical notation of radiculopathy since the course of epidural steroid

injections in 1999. Dr. Fannin's office notes do not indicate radiculopathy, but they do describe tenderness, reduced range of motion, positive straight leg raising, and muscle spasm (E.g., Tr. 273-4, 277-81), all of which could reasonably result from the degenerative changes seen on the MRI. Dr. Fannin was the only source to have treated the plaintiff since 1999, and the state agency reviewers whose restrictions were accepted by the ALJ did not comment on his conclusions; nor did they comment on the restrictions given by Dr. Winans. (Tr. 236-43, 314-22). Apparently, the only treating source that they addressed was Dr. Swords. Thus, their opinion evidence does not meet the Barker test, either.

In regard to the plaintiff's daily activities, the ALJ cited notations from Dr. Fannin that she was watching her grandchildren throughout the day and "was performing extensive household chores in April 2001 due to the remodeling of her home." (Tr. 17). The relevant office note, however, refers to one "grandchild," and that "she has been in much more pain lately because she is remodeling her house and having to do house work around obstacles that are not normally there." (Tr. 295). This does not suggest that she was doing more extensive chores, but that she was having increased pain with her normal chores. Elsewhere, the plaintiff indicated that she only watched the grandchild once or twice a month for an hour or so. (Tr. 95).

Finally, Dr. Fannin placed restrictions on other activities, such as being around pulmonary irritants and working at heights and around moving machinery. His notes

include references to treatment for asthmatic complaints/reactive airway disease, for which breathing medications were prescribed, and some restrictions on dangerous machinery and heights would seem not unreasonable for an individual who was taking as many medications as the plaintiff. (E.g., Tr. 271-2, 276-8). These restrictions are essentially uncontradicted.

Therefore, a remand will be required for further consideration of Fannin's assessments.[1]

This the 7 day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[1]The plaintiff's other argument on appeal is that the ALJ should have sought clarification from the treating source before rejecting his opinion on the grounds that it was not well supported by objective findings, citing 20 C.F.R. Sections 404.1512 and 416.912. These sections discuss recontacting a medical source to obtain additional information, but the issue here does not appear to be lack of information from the physician. Rather, it is the conclusions drawn by the doctor. Since the case is being remanded on other grounds, additional information can be obtained from Dr. Fannin by the plaintiff if she so desires.